MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2022 ME 42
Docket:      Yor-21-344
Argued:      June 6, 2022
Decided:     July 26, 2022

Panel:       STANFILL, C.J., and MEAD, JABAR, HORTON, CONNORS, and LAWRENCE, JJ.

RICHARD OUELLETTE

v.

SACO RIVER CORRIDOR COMMISSION

JABAR, J.

[¶1]  Richard Ouellette appeals from a decision of the Superior Court (York County, *Douglas, J.*) affirming the decision of the Saco River Corridor Commission denying Ouellette's application to build a privacy fence along a portion of his property because such a fence would unreasonably despoil the scenic, rural, and open space character of the Saco River Corridor.  Because the Commission's "scenic view" rule, 94-412 C.M.R. ch. 103, § 2(G)(3) (effective Jan. 30, 2006), neither conflicts with the Saco River Corridor Act, 38 M.R.S. §§ 951-969 (2022), nor is unconstitutionally void for vagueness, and because the Commission's decision was supported by substantial evidence in the record, we affirm.

## I. BACKGROUND

[¶2]  The following facts are drawn from the Commission's findings, which are supported by competent record evidence.  *See Sultan Corp. v. Dep't of Env't Prot.*, 2022 ME 21, ¶ 2, 272 A.3d 296.  Richard Ouellette owns property on the Saco River on Pool Street in Biddeford.  The property is located within the Limited Residential District of the Saco River Corridor as defined by 38 M.R.S. § 957-B.  The property abuts 11 and 13 Marblehead Lane.  If there are no obstructions, the Saco River is visible from the Marblehead Lane properties when looking over the Pool Street property during certain seasons.

[¶3]  In June 2020, it came to the Commission's attention that Ouellette had replaced an existing 264-foot-long, 5-foot-tall, vinyl post-and-rail fence with a 6- to 7-foot-tall privacy fence, without obtaining a permit from the Commission.  Ouellette installed this fence to block his view of his neighbor's backyard.  After the Commission contacted Ouellette about the fence, he applied for an after-the-fact permit for the project.  This initial application proposed keeping the entire fence intact.  The neighbors at 11 and 13 Marblehead Lane submitted comments that their views of the Saco River were obstructed by the new fence in a way that they were not by the previous fence and submitted photographic evidence supporting the comments.  Commission staff visited the

site on August 14, 2020, and two commissioners visited the site on August 24, 2020. The Commission considered the application at their August 26, 2020, meeting. By a vote of 7-3, the Commission denied the application, determining that, under the standards set forth in 94-412 C.M.R. ch. 103, § 2(G), the fence unreasonably obstructed the views of the river from abutting properties. The Commission issued a written decision on September 2, 2020.

[¶4] Ouellette initially appealed this decision but withdrew his appeal after he reapplied for the permit on September 16, 2020. The new application proposed replacing the six solid panels nearest to the river with the original split-rail fence. On September 30, 2020, commissioners visited the site again. The abutting landowners again submitted comments in opposition to the application. During its October 28, 2020, meeting, the Commission denied the application by a vote of 10-3 and found that the proposed privacy fence "would unreasonably involve factors enumerated in Section 959-A.1.A. through K of the Act INCLUDING: G. Despoliation of the scenic, rural, and open space character of the corridor" by unreasonably obstructing the views of the river from abutting properties. The Commission issued its written decision, with findings, on November 4, 2020.

4

[¶5]  On November 27, 2020, Ouellette requested that the Commission reconsider the application, pursuant to 94-412 C.M.R. ch. 101, § 5 (effective Jan. 30, 2006).  The neighbors, as they did with the application, filed documents opposing the request for reconsideration.  The Commission heard the request for reconsideration at its January 4, 2021, meeting.  By a vote of 8-6 the Commission rejected the request.  A commissioner then proposed replacing ten panels with the original split-rail fence, but this proposal failed to carry because the Commission voted 7-7.  The Commission issued its decision with findings on January 13, 2021.  On February 3, 2021, Ouellette timely appealed from the Commission's decision to the Superior Court.[1]  *See* M.R. Civ. P. 80C(b); 5 M.R.S. § 11002(3) (2022).

[¶6]  Following argument on August 17, 2021, the Superior Court affirmed the Commission's decision on October 15, 2021.  Ouellette timely appeals.  *See* 5 M.R.S. § 11008(1) (2022).

---

[1]  Although 38 M.R.S. § 968 (2022) provides that appeals from decisions of the Commission be taken pursuant to M.R. Civ. P. 80B, the statute was enacted in 1979, prior to the adoption of M.R. Civ. P. 80C in 1983.  *See Palesky v. Sec'y of State*, 1998 ME 103, ¶ 7 n.2, 711 A.2d 129 ("Prior to the adoption of M.R. Civ. P. 80C, both governmental and agency actions were reviewed according to M.R. Civ. P. 80B . . . .").  Because the Commission is an administrative agency, *see* 5 M.R.S. § 8002(2) (2022), this appeal was properly brought under M.R. Civ. P. 80C, which "applies to appeals from state administrative action," *Dubois v. Town of Arundel*, 2019 ME 21, ¶ 5, 202 A.3d 524.  *See also* M.R. Civ. P. 80B Advisory Committee's Notes to February 15, 1983 Order Amending Rule 80B ("[M.R. Civ. P. 80B and 80C] now provide separate procedural paths for judicial review of local government agencies and for review of state administrative agencies subject to the Maine Administrative Procedure Act.").

## II. DISCUSSION

[¶7] On appeal, Ouellette contends that the Commission's "scenic view" rule conflicts with the Saco River Corridor Act, that the rule is unconstitutionally vague, and that the Commission's decision to deny the permit was not supported by substantial evidence in the record.

### A. The "Scenic View" Rule

### 1. Standard of Review

[¶8] "In an appeal from a Superior Court judgment on a Rule 80C petition, we review the underlying administrative agency decision directly for abuse of discretion, errors of law, or findings unsupported by substantial evidence in the record." *Maquoit Bay, LLC v. Dep't of Marine Res.*, 2022 ME 19, ¶ 5, 271 A.3d 1183. We review a trial court's interpretation of statute de novo. *SAD 3 Educ. Ass'n v. RSU 3 Bd. of Dirs.*, 2018 ME 29, ¶ 14, 180 A.3d 125. When a statute's language is unambiguous, "we interpret the provisions according to their unambiguous meaning unless the result is illogical or absurd," and only if a statute is ambiguous do we "consider the statute's meaning in light of its legislative history and other indicia of legislative intent." *Id.* (quotation marks omitted).

## 2. The Saco River Corridor Act

[¶9] The Saco River Corridor Act establishes the Saco River Corridor and the Commission. The Legislature found "that [the Saco, Ossipee, and Little Ossipee Rivers] and their adjacent lands possess outstanding scenic and aesthetic qualities." 38 M.R.S. § 951. The purpose of the Act includes preserving the "scenic, rural and unspoiled character of the lands adjacent to these rivers." *Id.* The Act separates the corridor into three districts—the Resource Protection District, the Limited Residential District, and the General Development District. *Id.* § 957. Ouellette's property is in the Limited Residential District, which is defined as "lands within the corridor which may be suitable for development, but which are not necessary for the growth of areas of intensive development." *Id.* § 957-B(1). Uses that are allowed by permit include single-family residences and accessory structures. *Id.* § 957-B(3)(E). "Fences" are included in the Act's definition of "structure." *Id.* § 952(16).

[¶10] To receive a permit to construct a structure in the Limited Residential District, an applicant must show that a proposed use will not unreasonably cause any of eleven enumerated conditions. *Id.* § 959-A(1)(A)-(K). Paragraph (G) requires the applicant to prove that the proposed use will not involve an unreasonable "[d]espoliation of the scenic,

rural and open space character of the corridor." The Commission, which is authorized to adopt additional standards for permitted uses, *id.* § 954-C(1), has promulgated rules that expand upon section 959-A(1)(G). One of these rules, the "scenic view" rule, requires applicants to show "[t]he proposed use will not unreasonably obstruct scenic views from neighboring properties or public roads." 94-412 C.M.R. ch. 103, § 2(G)(3).

[¶11] Ouellette argues that the "scenic view" rule conflicts with the Act because the Commission cannot deny a permit based on a proposed use's effect on an abutting landowner, categorically bans all fences in the corridor, and empowers the Commission to create de facto view easements.

### a. Effect on Abutting Landowners

[¶12] The plain language of section 959-A(1)(G) of the act requires the Commission to determine whether a proposed use will involve "any unreasonable . . . despoliation of the scenic, rural and open space character of the corridor." This requirement clearly extends to the lands adjacent to the river. *See id.* § 951 ("[I]t is the purpose of this chapter . . . to preserve the scenic rural and unspoiled character of the lands adjacent to [the rivers constituting the corridor] . . . ."); *id.* § 953 ("The [Saco River Corridor] includes the lands adjacent to these rivers to a distance of 500 feet."). The rule promulgated in

8

accordance with the statute provides that a use must not unreasonably obstruct scenic views from the road and neighboring properties or be highly visible from the water. 94-412 C.M.R. ch. 103, § 2(G)(3)-(4). The unambiguous language in section 2(G) does not conflict with the statute but instead provides the Commission with a consistent means of examining whether the use will involve an "unreasonable [d]espoliation of the scenic, rural and open space character of the corridor," 38 M.R.S. § 959-A(1)(G).

### b.  The Act Does Not Ban Fences

[¶13] Ouellette argues that the Commission's "scenic view" rule conflicts with the Act because it categorically bans the use of fences, a permitted use under the Act. *See* 38 M.R.S. §§ 952(2), (16), 957-B. However, the rule does not ban all fences, just those that unreasonably obstruct scenic views, 94-412 C.M.R. ch. 103, § 2(G)(3), which aligns with the statute. *See* 38 M.R.S. § 959-A(1)(G) (barring uses that unreasonably cause "[d]espoliation of the scenic ... character of the corridor"). "[W]hether a proposed activity will unreasonably interfere with an existing scenic or aesthetic use will necessarily depend on the specific circumstances of a given case." *Uliano v. Bd. of Env't Prot.*, 2009 ME 89, ¶ 23, 977 A.2d 400. Ultimately, neither the statute nor the rules ban the use of all fences, and whether any given fence unreasonably interferes

with the scenic view is a fact-specific determination within the Commission's role as fact finder.

### c. View Easements

[¶14] Ouellette also argues that the "scenic view" rule conflicts with the Act because the rule empowers the Commission to "create and give away de facto view easements to adjacent landowners," a power the Act does not bestow. A view easement requires "the owner of the servient estate [to] not undertake any activities, such as the construction of a building, that would impede the view of the owner of the dominant estate." *Patterson v. Paul*, 863 N.E.2d 527, 533 (Mass. 2007). However, Ouellette points to no authority that would differentiate the "scenic view" rule from other rules that consider the scenic effect on neighbors and that have been upheld. *See, e.g.*, *Uliano*, 2009 ME 89, ¶ 31, 977 A.2d 400 ("[P]rotection of scenic and aesthetic uses serves a significant governmental interest and is a valid exercise of the police power."). Further, the rule does not block all obstructions, only "unreasonable" ones. 38 M.R.S. § 959-A(1)(G). We therefore reject this argument.

## B. Void for Vagueness

[¶15] Ouellette contends that the "scenic view" rule is unconstitutionally void for vagueness. "A person challenging the constitutionality of a legislative

enactment 'bears a heavy burden of proving unconstitutionality[,] since all acts of the Legislature are presumed constitutional,'" *Jones v. Sec'y of State*, 2020 ME 113, ¶ 18, 238 A.3d 982 (quoting *Goggin v. State Tax Assessor*, 2018 ME 111, ¶ 20, 191 A.3d 341). This burden also applies to regulations. *Davis v. Sec'y of State*, 577 A.2d 338, 341 (Me. 1990) ("The party challenging the regulation bears the heavy burden of overcoming its presumption of constitutionality."). In a void-for-vagueness challenge, the challenging party "must demonstrate that the statute has no valid application or logical construction." *Stewart Title Guar. Co. v. State Tax Assessor*, 2009 ME 8, ¶ 40, 963 A.2d 169. A statute is unconstitutionally vague "when its language either forbids or requires the doing of an act in terms so vague that people of common intelligence must guess at its meaning, or if it authorizes or encourages arbitrary and discriminatory enforcement." *Uliano*, 2009 ME 89, ¶ 15, 977 A.2d 400 (quotation marks omitted). In a land use context, standards that are "wholly subjective" and "permit[] municipal employees or board members to make 'legislative-type decisions based on any factor they independently deem[] appropriate" are void for vagueness. *Id.* ¶ 25 (quoting *Kosalka v. Town of Georgetown*, 2000 ME 106, ¶ 16, 752 A.2d 183).[2] However, "[o]bjective quantification, mathematical

---

[2] *Kosalka v. Town of Georgetown* addresses an improper delegation of legislative authority and does not address a void-for-vagueness challenge. 2000 ME 106, ¶ 1, 752 A.2d 183. However, we

certainty, and absolute precision are not required by either the United States Constitution or Maine Constitution." *Friends of Me.'s Mountains v. Bd. of Env't Prot.*, 2013 ME 25, ¶ 21, 61 A.3d 689 (quotation marks omitted).

[¶16] We have held that a standard that required that a proposed activity "not unreasonably interfere with existing scenic, aesthetic, recreational or navigational uses," 38 M.R.S. § 480-D(1) (2022), was sufficiently definite to not be void for vagueness or unconstitutionally delegate legislative power. *Uliano*, 2009 ME 89, ¶¶ 14, 29-32, 977 A.2d 400. In *Uliano*, addressing the lack of quantitative standards, we emphasized the difference between the limited requirement in the statute at issue there—that the decision maker determine whether a proposed activity unreasonably interfered with an existing scenic or aesthetic use—and *Kosalka*'s "amorphous command . . . requiring an applicant to prove that a project will 'conserve natural beauty.'" *Id.* ¶ 25. Further, because the statute in *Uliano* was administered by an executive agency (the Board of Environmental Protection) subject to the Maine Administrative Procedure Act, the parties were provided with greater due process protections.

---

have stated that "both vagueness and unlawful delegation challenges are concerned with the issue of definiteness" and that both have been "properly treated as a single inquiry." *Uliano v. Bd. of Env't Prot.*, 2009 ME 89, ¶ 15, 977 A.2d 400. We look to our analysis in *Kosalka* for limited guidance on the specificity required to meet constitutional requirements. *See id.* ¶¶ 24-28.

*Id.* ¶¶ 26-28.  Ultimately, we determined that the phrase 'scenic and aesthetic uses' was sufficiently definite and offered "an intelligible principle to which the person or body authorized to act is directed to conform."  *Id.* ¶¶ 29-30 (quoting *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472 (2001)).

[¶17]  However, the analysis as to whether a view is actually scenic, and therefore whether an application could potentially be denied under the rule, is more complicated.  Ouellette argues that not every view of the corridor is scenic and that there is no definition that determines what views are scenic.  However, the statute supports an interpretation that all views of the river are considered scenic.  The Legislature found that "[the rivers making up the corridor] and their adjacent lands possess outstanding scenic and aesthetic qualities." 38 M.R.S. § 951.  Although the Act specifies that there are areas of "exceptional scenic value" or "exceptional scenic importance," *see id.* §§ 951, 957-A(F), these areas are the subject of special statutes and rules, *id.* § 957-A(F); 94-412 C.M.R. ch. 103, § 2(G)(5), implying that the other rules would apply to all views of the corridor.  Looking to "the context of the whole statutory scheme of which the section at issue forms a part to achieve a consistent and harmonious result," *Fortin v. Titcomb*, 2013 ME 14, ¶ 7, 60 A.3d 765 (quotation marks omitted), we reject Ouellette's argument.

[¶18]  The statute further provides greater due process protections to Ouellette, thereby weakening his vagueness argument.  The Saco River Corridor Commission was established by the Legislature and is subject to Title 5.  *See* 5 M.R.S. § 12004-G(13) (2022); 38 M.R.S. §§ 954, 954-C.  This provides "adequate procedural safeguards to protect against an abuse of discretion" when, like here, "the statutory enactment of detailed specific standards is impossible."  *Uliano*, 2009 ME 89, ¶ 26, 977 A.2d 400 (quotation marks omitted).  Ultimately, we conclude that the rule is not unconstitutionally void for vagueness.

## C.    Substantial Evidence

[¶19]  Ouellette contends that the Commission's determinations that the fence unreasonably obstructed the views of the river from abutting properties and that those views were scenic were unsupported by substantial evidence.

[¶20]  "In an appeal from a Superior Court judgment on a Rule 80C petition, we review the underlying administrative decision directly for . . . findings unsupported by substantial evidence in the record."  *Maquoit Bay, LLC*, 2022 ME 19, ¶ 5, 271 A.3d 1183.  We will "not substitute our judgment for that of the agency and will affirm findings of fact if they are supported by substantial evidence in the record."  *AngleZ Behav. Health Servs. v. Dep't of*

14

*Health & Hum. Servs.*, 2020 ME 26, ¶ 12, 226 A.3d 762 (quotation marks omitted).  "Substantial evidence exists when a reasonable mind would rely on that evidence as sufficient support for a conclusion."  *Doane v. Dep't of Health & Hum. Servs.*, 2021 ME 28, ¶ 38, 250 A.3d 1101 (quotation marks omitted).  We "examine the entire record to determine whether, on the basis of all the testimony and exhibits before it, the agency could fairly and reasonably find the facts as it did."  *Id.* (quotation marks omitted).  However, the substantial-evidence standard of review "does not involve any weighing of the merits of evidence; instead, we will vacate an agency's factual findings only if there is no competent evidence in the record to support the findings."  *AngleZ Behav. Health Servs.*, 2020 ME 26, ¶ 12, 226 A.3d 762 (quotation marks omitted).  Accordingly, we will affirm the agency's findings "even if the record contains inconsistent evidence or evidence contrary to the result reached by the agency."  *Friends of Lincoln Lakes v. Bd. of Env't Prot.*, 2010 ME 18, ¶ 13, 989 A.2d 1128.

[¶21]  With respect to the unreasonable obstruction of a scenic view, the Commission found as follows:

> The prior existing split-rail fence allowed views to the river from abutting properties and Marblehead Lane.  The Commission finds the proposed changes to the fence would continue to unreasonably obstruct views of the river from abutting properties including

11 and 13 Marblehead Lane. Before the privacy fence was constructed[,] expansive views of the river and tidal marsh were visible from 11 and 13 Marblehead Lane. Views of the river and marsh vary based on the season, and in the late fall, winter, and early spring there was high visibility of the river before the fence was erected. This determination is based on photographs taken by Commission staff and provided by abutters and interested parties that show the prior existing view of the river from different abutting properties. Commissioners present for the site visit provided assessments of the site [that were] also considered in the determination of this application. Based on the facts, the Commission finds the proposed design is not within the meaning of the Act.

[¶22] The Commission reviewed evidence that included photographs of the views from the properties at 11 and 13 Marblehead Lane, from both before and after the fence was installed. Commission staff and some of the commissioners made several visits to the property to examine the views and the fence. The commissioners considered comments from several neighbors that described the views that existed before the fence was installed. Because the Commission had competent evidence upon which to determine that the views were scenic, to both neighbors and the public, and that those views were unreasonably obstructed by Ouellette's fence, the Commission's decision was supported by substantial evidence.

The entry is:

Judgment affirmed.

Gene R. Libby, Esq., and Tyler J. Smith, Esq. (orally), Libby O'Brien Kingsley & Champion, LLC, Kennebunk, for appellant Richard Ouellette

Aaron M. Frey, Attorney General, Caleb E. Elwell, Asst. Atty. Gen. (orally), and Margaret A. Bensinger, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Saco River Corridor Commission

York County Superior Court docket number AP-2021-02
FOR CLERK REFERENCE ONLY