STATE OF MAINE
PENOBSCOT, SS.

SUPERIOR COURT
Docket No. APP-2021-2

ERIC BAXTER                                    )
                                               )
                                               )
          v.                                   )          **ORDER**
                                               )
                                               )
                                               )
STATE OF MAINE                                 )
DEPARTMENT OF PUBLIC SAFETY                     )

This matter came before the Court for oral argument on October 31, 2022. James Wholly, Esq. appeared for Eric Baxter. AAG Avery appeared for the State of Maine Department of Public Safety.

The essence of the dispute is that on May 1, 2020, Eric Baxter applied for a "Contract Security Company" license, and on February 16, 2021, the Commissioner of Public Safety denied Mr. Baxter's application. Mr. Baxter filed his appeal on April 9, 2021. On September 16, 2021, Mr. Baxter moved to admit additional evidence, and that motion was denied.

Standard of Review

Persons who are aggrieved by a final action or decision of an administrative agency of the State of Maine may seek judicial review of the administrative action pursuant to subchapter 7 of Maine's Administrative Procedure Act (APA), 5 M.R.S. §§ 11001-11008, and M.R. Civ. P. 80C. In the 80C review process, the Superior Court acts as an intermediate appellate court; its role in reviewing an administrative agency's decision under the APA is "deferential and limited." *Watts v. Bd. of Envtl. Prot.,* 2014 ME 91, ¶ 5, 97 A.3d 115. Pursuant to the APA, the Court may reverse or modify the decision of a state governmental agency only if the agency's "administrative findings, inferences, conclusions or decisions" are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Affected by bias or error of law;

(5) Unsupported by substantial evidence on the whole record; or

1

(6) Arbitrary or capricious or characterized by abuse of discretion.

5 M.R.S. § 11007(4). The party challenging the agency's decision bears the burden of persuasion. *Maquoit Bay, LLC v. Dep't of Marine Res.*, 2022 ME 19, ¶ 5, 271 A.3d 1183; *Rossignol v. Me. Pub. Employees. Ret. Sys.*, 2016 ME 115, ¶ 6, 144 A.3d 1175; *Town of Jay v. Androscoggin Energy LLC*, 2003 ME 64, ¶ 10, 822 A.2d 1114.

When examining an agency's interpretation of law, the Court's review is de novo. *Munjoy Sporting & Ath. Club v. Dow,* 2000 ME 141, ¶ 7, 755 A.2d 531. However, "[w]hen reviewing an agency's interpretation of a statute that it administers, [the Court will] defer to the agency's construction unless the statute plainly compels a contrary result." *Passadumkeag Mountain Friends v. Bd. of Envtl. Prot.*, 2014 ME 116, ¶ 12, 102 A.3d 1181; *see also Palian v. HHS,* 2020 ME 131, ¶ 20, 242 A.3d 164 ("Our precedent instructs us to give considerable deference to the agency's interpretation of its own rules, regulations, and procedures, and [we] will not set aside the agency's findings unless the rule or regulation plainly compels a contrary result.").

"Substantial evidence exists when a reasonable mind would rely on that evidence as support for a conclusion." *Ouellette v. Saco River Corridor Comm'n,* 2022 ME 42, ¶ 20, 278 A.3d 1183. When examining whether an agency's decision rests upon administrative findings that are "unsupported by substantial evidence on the whole record," the Court "examine[s] the entire record to determine whether on the basis of all the testimony and exhibits before it, the agency could fairly and reasonably find the facts as it did." *Id.* However, this examination "does not involve any weighing of the merits of [the] evidence." *Id.* The Court may "vacate an agency's factual findings only if there is no competent evidence in the record to support the findings" and "will affirm the agency's findings even if the record contains inconsistent evidence or evidence contrary to the result reached by the agency." *Id.* In other words, the Court "will not substitute [its] judgment for that of the agency" and will affirm an administrative agency's finding of fact if the finding is supported by any substantial evidence in the record. *Id.*; 5 M.R.S. § 11007 ("The court may not substitute its judgment for that of the agency on questions of fact."); *see also Concerned Citizens to Save Roxbury v. Bd. of Envtl. Prot.*, 2011 ME 39, ¶ 24, 15 A.3d 1263 ("In applying the 'substantial evidence standard,' . . .; we determine whether there is any competent evidence in the record to support a finding.")

Factual Background

The Maine State Police conducted an investigation in connection with Mr. Baxter's license application.

A routine background check revealed that Mr. Baxter had been involved in three incidents with the Brewer Police Department. Those incidents, from the perspective of the Brewer Police Department, were as follows:

1. On February 19, 2017, a city public works employee was driving a dump truck doing snow removal. The employee reported that Mr. Baxter was standing in the middle of Parker Street with a shovel and that Mr. Baxter began yelling at the employee and asking him if he wanted to fight. The employee further reported that Mr. Baxter was acting erratic and seemed crazy. Finally, the employee reported that Mr. Baxter banged on the side of the employee's truck and yelled profanities. A second city employee confirmed the first employee's report and further reported that Mr. Baxter had yelled profanities at him as well.

   When a police officer approached Mr. Baxter while Mr. Baxter was on Parker Street near the sidewalk talking with two young females, Mr. Baxter began yelling at the police officer. Then, in response to the officer's question about what issue he had, Mr. Baxter ignored the officer and continued to talk with the two young females. Mr. Baxter continued to use profanities and the officer believed such language was offensive to the two young females who had a scowled expression and who the officer believed were Jehovah's Witnesses. After some further back-and-forth, Mr. Baxter pulled out his cell phone and put it close to the officer's face, presumably to record the officer. The officer told him to get the cell phone out of his face. Mr. Baxter asked if he was free to leave and the officer said "yes."

2. On May 22, 2017, city employees reported that Mr. Baxter became angry when they asked him for identification and one of the employees thought Mr. Baxter was going to attack him. Mr. Baxter was served with a trespass order for all city property.

3. On July 17, 2019, employees at City Hall reported that Mr. Baxter had been to City Hall and had engaged in erratic and aggressive behavior. Mr. Baxter had been complaining about the Brewer Police not doing anything about drug dealers and an autistic child who cut across his property. The employees were not comfortable with Mr. Hall's behavior. Mr. Baxter was again served with a trespass order.

As part of the process to determine whether to grant or deny Mr. Baxter's license application, Sgt. Stevenson with the Maine State Police interviewed Mr. Baxter. During his interview with Sgt. Stevenson, Mr. Baxter characterized the February 28, 2017 incident noted by the Brewer Police Department as "utterly bull..." and indicated that he did not feel this incident should be held against him. Mr. Baxter characterized the May 22, 2017 incident as "total BS" With respect to the 2019 Brewer Police report, Mr. Baxter acknowledged that his behavior was making

3

people nervous and indicted that his head injury was a factor. Mr. Baxter also informed Sgt. Stevenson that he (Baxter) had been a business owner for 45 years.

In the denial letter, the Commissioner of Public Safety referenced Mr. Baxter's incidents with the Brewer Police and concluded that Mr. Baxter had demonstrated a "lack of judgment, temperament, and decision-making skills to engage in the profession for which you are seeking licensure. Accordingly, I am denying your application for a Contract Security Company license."[1]

Analysis

The licensing process for a "Contract Security Company" license provides that the "Commissioner shall issue a license to any person who has demonstrated good moral character" and who meets additional requirements specified in the statute. 32 M.R.S. §9405(1-A).

The Commissioner's decision whether or not to issue a license must be "based solely upon information recorded by governmental entities within 5 years of receipt of an application. ... 32 M.R.S. § 9405(2). The essence of an 80C appeal is to determine whether the Commissioner's decision was supported by the information available to the Commissioner on the date the Commissioner made his decision. The information available to the Commissioner was Mr. Baxter's application (and Releases), the three Brewer Police Department reports, and the December 30, 2020 interview of Mr. Baxter by Sgt. Stevenson of the Maine State Police.[2]

In making a determination about "good moral character" the Commissioner must consider, among other things, "[i]nformation in the record indicating that the applicant has engaged in reckless or negligent conduct." 32 M.R.S. § 9405 (2-C). Thus, the question is whether there is substantial record evidence that Mr. Baxter engaged in "reckless or negligent conduct." "Reckless or negligent conduct" is defined as:

> "Reckless or negligent conduct means that the applicant, either consciously disregarding or failing to be aware of a risk that his conduct would cause such a result, engaged in conduct which in fact created a substantial risk of either death, serious bodily injury, bodily injury or offensive physical contact to another human being or the taking of, or damage or destruction to, the property of another person or

---

[1] At oral argument, Mr. Baxter did not argue that the lack of specificity in the denial letter was fatal, but instead argued that the incidents reported by the Brewer Police Department did not constitute a lack of "good moral character."

[2] During his interview with Sgt. Stevenson, Mr. Baxter rejected two of the Brewer Police Department reports out of hand and gave some details with respect to the 2019 incident. Additionally, Mr. Baxter told Sgt. Stevenson that some of his bad behavior was due to a "head injury" he had suffered, and that Sgt. Stevenson could watch a YouTube video that depicted Mr. Baxter having the stent in his head drained. It does not appear that in his interview with Sgt. Stevenson or otherwise that Mr. Baxter mentioned any character witnesses or offered any additional documentation in support of his application.

4

government, and the applicant's disregard or failure to be aware of that risk, when viewed in light of the nature and purpose of the applicant's conduct and the circumstances known to him, involved a deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation." 32 M.R.S. § 9403(8-A).

The Court is satisfied that there is substantial competent record evidence that the February 19, 2017 incident of banging on the side of a city truck, yelling profanities, and challenging the occupant of the truck to fight created a substantial risk of bodily injury or offensive physical contact to another person; that Mr. Baxter either consciously disregarded or failed to be aware of the risk; and that Mr. Baxter's disregard or failure to be aware of that risk, when viewed in light of the nature and purpose of Mr. Baxter's conduct and the circumstances known to him, involved a deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation.

While the denial letter from the Commissioner did not specify that the denial was due to Mr. Baxter's reckless or negligent conduct as defined by the governing statute, the Court finds it reasonable to infer this reason for the denial due to the Commissioner's recitation of the police reports in the denial letter.

Conclusion

Mr. Baxter has failed to demonstrate, based on the record before the Commissioner, that he has "good moral character" as defined by the governing statute. The Commissioner did not violate any constitutional or statutory provisions, act in excess of his statutory authority, or engage in unlawful procedure. Additionally, the Commissioner's decision was not affected by bias or error of law, nor was it arbitrary or capricious or characterized by abuse of discretion. There is substantial competent record evidence to support the Commissioner's denial of Mr. Baxter's license application. The Commissioner's denial of Mr. Baxter's license application in affirmed.

The Clerk shall incorporate this Order upon the docket by reference.

Dated: October 31, 2022

_____
Ann M. Murray, Justice
Maine Superior Court

ORDER/JUDGMENT ENTERED IN THE
COURT DOCKET ON: 11-1-2022

5