Sal LENTINE et al.

v.

TOWN OF ST. GEORGE et al.

Supreme Judicial Court of Maine.

Argued Oct. 4, 1991.
Decided Nov. 14, 1991.

---

Robert C. Perkins (orally), Harmon, Jones & Sanford, Camden, for plaintiffs.

Patrick J. Scully, Lee K. Bragg (orally), Bernstein, Shur, Sawyer & Nelson, Portland, Eric J. Bryant (orally), Asst. Atty. Gen., Augusta, for defendants.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, and COLLINS, JJ.

McKUSICK, Chief Justice.

Plaintiffs Sal and Helen Lentine appeal from the affirmance by the Superior Court (Knox County, *Kravchuk, J.*) of the decision of the Zoning Board of Appeals of the Town of St. George, which denied their application to build a wharf because their proposal did not meet the requirements of the Town's Shoreland Zoning Ordinance ("Ordinance"). We also find no reversible error in the Board of Appeals' decision.

As trustees of the Frances S. Lentine Trust, the Lentines own a summer home on a shorefront lot on Teel Cove in Port Clyde Harbor in St. George. On March 19, 1990, the Lentines filed with the St. George Planning Board an application for a permit to build a wharf on their waterfront. The wharf was proposed to be a permanent, pile-supported timber structure, 6 feet wide and 190 feet long, with a 32-foot-long ramp and a 20-by-16-foot floating dock attached to the wharf on a seasonal basis.

With the proposed ramp and floating dock, the entire structure would extend a total of about 236 feet.[1] The purpose of the wharf was to provide a deep-water dock for the Lentines' pleasure boat.

In considering the Lentines' application, the Planning Board had the following evidence before it. The Lentines' boat draws three feet of water; because at low tide the water level at the end of the proposed float would be only six inches, their boat could be docked there for about 5 hours out of each 12–hour tidal cycle. Various neighbors expressed concern over the length of the wharf and the adverse effect it would have on the activity in the cove. One neighbor's lobster boat is bigger than the Lentines' pleasure craft and yet it can be tied at his nearby 70–foot wharf for about 8 hours of each cycle. Another neighbor opposed the wharf on the ground that it would interfere with the flow of ice and thereby threaten his nearby lobster pound; it was estimated that such an ice "pile-up" could happen once in four years and cost thousands of dollars." A third neighbor asserted that if the proposed wharf were swung slightly to the northeast its length could be reduced by 50 to 140 feet, although in response the Lentines' surveyor expressed fears that a relocated wharf would encroach on tidal rights of others.

In April of 1990 the Planning Board denied the Lentines' application. It found that the proposed wharf was "larger in dimension than necessary to carry on the activity and be consistent with existing conditions, use, and character of the area"; thus the Lentines' proposal did not meet the requirements of section 13(F)(4) of the Ordinance.[2] The Planning Board also

---

1. In 1989 the Lentines had filed with the Planning Board a prior application to build a wharf. The first application was similar to the second application, except that the first proposed a wharf 204 feet in length rather than 190 feet. The Planning Board approved the first application. A group of abutters and other interested parties, however, appealed that decision to the Zoning Board of Appeals, which overturned the Planning Board's decision. The Lentines did not seek judicial review of that decision in the Superior Court.

2. The St. George Shoreland Zoning Ordinance, adopted pursuant to the Mandatory Shoreland Zoning Act, 38 M.R.S.A. §§ 435–449 (1989 & Supp.1990), and modeled on the *State of Maine Guidelines for Municipal Shoreland Zoning Ordinances* issued by the Board of Environmental Protection, reads in relevant part:

 Section 13. *Land Use Standards*
 All land use activities shall conform to the following applicable land use standards.

 . . . .

 F. *PIER[S], DOCKS, FLOATS, WHAR[VES],*
 . . .

found that the information submitted by the Lentines was "not adequate to allow the Board to make a determination that the facility will be located so as to minimize adverse effects on fisheries," and so the Lentines also failed to meet their burden of proof with respect to section 13(F)(3) of the Ordinance.

On the Lentines' appeal of the Planning Board's decision, the Zoning Board of Appeals affirmed the denial of the Lentines' wharf application. Pursuant to M.R.Civ.P. 80B, the Lentines then sought judicial review in the Superior Court, naming as defendants the Town of St. George and its code enforcement officer.[3] Because the Lentines challenged the constitutionality of the St. George Ordinance, which was closely modeled on the *State of Maine Guidelines for Municipal Shoreland Zoning Ordinances* issued by the Board of Environmental Protection, the Attorney General of the State of Maine intervened as a defendant. The Superior Court affirmed the Board of Appeals' decision on the ground of the Lentines' noncompliance with section 13(F)(4), and hence did not reach the question whether they had complied with section 13(F)(3).[4]

Before us the Lentines' appeal presents two issues: (1) whether section 13(F)(4) is on its face unconstitutionally vague and (2) whether the Board of Appeals erred in finding that the Lentines failed to sustain their burden of proof relative to section 13(F)(4). We answer both questions in the negative.

## I.

### Constitutionality of Section 13(F)(4)

The Lentines contend that section 13(F)(4) of the St. George Ordinance is unconstitutionally vague. They urge us to read the last half of that section to impose an overall requirement that their proposed wharf "be consistent with existing conditions, use, and character of the area" and, on the basis of that broad reading, they contend that the Ordinance's lack of any definition of the word "area" and the lack of any standards for applying the consistency test render the section unconstitutional on its face. The Lentines correctly note that we have held ordinances void for vagueness because they failed "to furnish a guide which will enable those to whom the law is to be applied to reasonably determine their rights thereunder, and [which will assure] that the determination of those rights will not be left to the purely arbitrary discretion of the administrat[ive agency]". *Stucki v. Plavin*, 291 A.2d 508, 510 (Me.1972). We, however, do not agree with the reading the Lentines urge us to give to section 13(F)(4) of the Ordinance. Properly construed, that section does not run afoul of the vagueness doctrine.

By a well established principle of statutory construction, any ambiguity in the St. George Ordinance must be resolved to pre-

---

In addition to Federal, State, or local permits which may be required for such structures and uses, that shall conform to the following:

1. Access from shore shall be developed on soils appropriate for such use and constructed so as to control erosion;

2. The location shall not interfere with developed or natural beach areas;

3. The facility shall be located so as to minimize adverse effects on fisheries as demonstrated by a Department of Marine Resources approval; and

4. The facility shall be no larger in dimension than necessary to carry on the activity and be consistent with existing conditions, use, and character of the area.

3. Both municipal defendants will hereinafter be referred to as "the Town."

4. The Town argued before the Superior Court, and again on appeal to this court, that principles of *res judicata* barred the reapplication by plaintiffs for a proposed wharf substantially similar to their first proposal. Because the Planning Board and the Board of Appeals handled the second application on its merits, they by implication decided that it was an application substantially different from the first application, thereby avoiding the doctrine of administrative *res judicata*. Although we have stated that the determination of substantial difference is reviewable only for abuse of discretion, *see Silsby v. Allen's Blueberry Freezer, Inc.*, 501 A.2d 1290, 1295–96 (Me.1985); *Driscoll v. Gheewalla*, 441 A.2d 1023, 1027 (Me.1982), that determination is essentially a factual finding subject to review for clear error. We find no clear error or abuse of discretion here.

serve its constitutionality. *See State v. Horton*, 561 A.2d 488, 490 (Me.1989). Section 13(F)(4) reads in full as follows:

The facility shall be no larger in dimension than necessary to carry on the activity and be consistent with existing conditions, use, and character of the area.

That section readily lends itself to an interpretation that avoids any question of unconstitutional vagueness. By that reasonable construction, the last half of the section imposes merely a second criterion for judging the allowable size of a proposed wharf. In other words, as applied here, section 13(F)(4) provides that the Lentines' wharf may not be either (1) "larger in dimension than necessary to carry on the activity" of deep water access for the Lentines' pleasure boat, or (2) "larger in dimension than ... [will] be consistent with existing conditions, use, and character of the area." Further, we construe the adjective "consistent" as the word is used in the context of section 13(F)(4) to mean "not conflicting or interfering with," so that the second dimensional requirement of the section is that the proposed wharf may not be so large that it conflicts or interferes with existing conditions, use, and character of the area that would be affected by the wharf. With that limiting construction of the section, the Lentines and other applicants for wharf permits are able reasonably to determine their rights thereunder, and the determination of those rights is not left to the purely arbitrary discretion of the Town's zoning boards. Rather, section 13(F)(4) spells out constitutionally adequate standards to guide the zoning boards in their decisions on applications for wharf permits.

Our construction of the challenged section is the most plausible reading of its drafters' intent.[5] Section 13(F) of the Ordinance lists four separately numbered requirements that apply specially to proposals to build piers, wharves, and similar facilities.[6] It is unlikely that the drafters would locate in section 13 a comprehensive requirement that could apply to any building proposal, and it is even more unlikely that they would tag that requirement on at the end of the fourth clause of section 13(F), which clearly begins with a specific limitation on the size of a wharf and which follows three other subsections that focus on the very specific subjects of control of soil erosion, protection of developed beach areas, and minimization of adverse effects upon fisheries. If the drafters had intended to impose a broad requirement of consistency in all respects with the existing conditions, use, and character of the area, they would more naturally have included it in section 14(B)(7) of the Ordinance along with the nine general preconditions, such as the conserving of natural beauty, that are there prescribed for the granting of permits, including those for building wharves.[7] Or, if the drafters had intended

5. The St. George Planning Board apparently read section 13(F)(4), as do we, to prescribe only the dimensional limitation on a permitted wharf, because it phrased its controlling finding as follows:

[T]he [proposed] facility is larger in dimension than necessary to carry on the activity and be consistent with existing conditions, use, and character of the area.

6. *See* n. 2 above.

7. Section 14(B)(7) of the St. George Shoreland Zoning Ordinance provides:

7. Permits Issued by Planning Board

The Planning Board shall approve or deny those applications on which it is empowered to act as stated in this Ordinance. The Planning Board shall, after the submission of a complete application including all information requested, grant a permit if it makes a positive written finding of fact based on the information presented to it that, except as specifically exempted in this Ordinance, the proposed use:

a. Will not result in unsafe or unhealthful conditions;

b. Will not result in erosion or sedimentation;

c. Will not result in water pollution;

d. Will not result in damage to spawning grounds, fish, aquatic life, bird and other wildlife habitat;

e. Will conserve shoreland vegetation;

f. Will conserve visual points of access to waters as viewed from public facilities;

g. Will conserve actual points of public access to waters;

h. Will conserve natural beauty;

i. Will avoid problems associated with flood plain development and use; and

j. Is in conformance with the provisions of Section 13, Land Use Standards.

wharves alone to be subject to the broad consistency requirement, they would likely have made it a separate subsection (5) in section 13(F). The drafters did not follow either of those courses; they placed the consistency language only in section 13(F) and then only at the end of subsection (4) that concerns only the size of wharves. Placed in that context the consistency requirement cannot reasonably be read to relate to anything more than the proposed wharf's dimensions. When so read, proper application of the consistency clause is perfectly straightforward. Given our narrow construction, section 13(F)(4) of the Ordinance easily passes constitutional muster.

## II.

### Sufficiency of the Evidence

■ The Board of Appeals found, as had the Planning Board, that the Lentines' proposal did not meet the requirements of section 13(F)(4). Because the Lentines had the burden of proof to establish that they had satisfied all requirements for approval, see *Bruk v. Town of Georgetown*, 436 A.2d 894, 898 (Me.1981), they "to.prevail on appeal ... must show not only that those Board findings ... are unsupported by record evidence, but also that the record compels contrary findings." *Grant's Farm Assoc., Inc. v. Town of Kittery*, 554 A.2d 799, 801 (Me.1989) (citing *Luce Co. v. Hoefler*, 464 A.2d 213, 215 (Me.1983)).

Clearly, this record does not compel the finding that the Lentines' proposed wharf met the requirements of section 13(F)(4). Indeed, there was ample evidence to show both that its size would interfere with other uses of Teel Cove and that it could have been smaller and still adequately meet the Lentines' needs. The Board had before it evidence that a wharf of the proposed size would interfere with the existing "conditions, use, and character" of the cove by, for example, creating a danger of ice "pile-up" that would threaten neighbors' property and businesses. The record before the Board of Appeals plainly does not compel a finding that the Lentines' proposed wharf would comply with the two size limitations imposed by section 13(F)(4).

The entry is:

Judgment affirmed.

All concurring.