2002 ME 79

**Gordon W. STEWART**

v.

**TOWN OF SEDGWICK et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs: March 26, 2002.
Decided: May 16, 2002.

May 15, 2002.

Gordon W. Stewart, Wilmington, for plaintiff.

James E. Patterson, Ellsworth, (for Town of Sedgwick), Gardiner & Leslie Schneider, Sedgewick, for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

CALKINS, J.

[¶ 1] Gordon Stewart appeals from a judgment entered in the Superior Court (Hancock County, *Mead, J.*) affirming the decision by the Town of Sedgwick Board of Appeals which approved the issuance of a permit to Gardiner and Leslie Schneider to build a dock. Stewart contends that the Board of Appeals erred in determining that the proposed dock would not violate the Town's Shoreland Zoning Ordinance. Specifically, he argues that the Board erred in finding that the dock will not interfere with a natural beach and in finding that the size of the dock is consistent with the conditions, use, and character of the area. Stewart also contends that because the Schneiders did not show a need for the dock, the permit should not have been granted. We affirm.

## I. BACKGROUND AND PROCEDURE

[¶ 2] The Schneiders sought and obtained from the Sedgwick Planning Board a permit to construct a dock, ramp, and float on their property on Eggemoggin Reach. Stewart, a neighbor, appealed the issuance of the permit to the Board of Appeals which affirmed the Planning Board's decision, and Stewart then filed an action in Superior Court seeking judicial review pursuant to M.R. Civ. P. 80B. When the Superior Court affirmed the Board of Appeals, Stewart appealed to this Court, and we vacated the judgment for the reason that the Board did not review the Planning Board's decision de novo as required by 30-A M.R.S.A. § 2691(3)(D) (1996) in the absence of a town ordinance specifying another procedure. *Stewart v. Town of Sedgwick,* 2000 ME 157, ¶¶ 6–7, 15, 757 A.2d 773, 775–76, 778. On remand, the Board of Appeals held a de novo hearing, made findings of fact, and concluded that the Schneiders were entitled to the permit to construct the proposed dock, ramp, and float. Stewart, who participated in the Board hearings, again appealed to the Superior Court, which again affirmed the Board's decision.

[¶ 3] At the Board of Appeals hearing following the remand, Stewart and the Schneiders made oral presentations, resubmitted various documents that had been given to the Board at the first hearing, and presented additional documents and photographs. The Schneiders described the proposed dock as consisting of a permanent section, constructed of wood, measuring two hundred by four feet, on epoxy coated steel piles and stringers reaching to the low water mark. Extending from the permanent dock will be a ramp and a sixteen by twenty-four foot float that will be removed for the winter. The height of the dock at the high water mark is to be six feet.

[¶ 4] The primary points of contention before the Board of Appeals were whether the proposed dock met the standards in section 15(C)(2), (4) and section 16(D) of the Sedgwick Shoreland Zoning Ordinance.[1] Section 15(C)(2) required that the location of the dock "not interfere with existing developed or natural beach areas." Section 15(C)(4) required that the dock "be no larger in dimension than necessary to carry on the activity and be consistent with existing conditions, use, and character of the area." The portion of section 16(D), relied upon by Stewart, stated that the applicant had to prove that the dock "is in conformity with the purposes and provisions of this Ordinance."

[¶ 5] The Board voted separately on whether the requirements in section 15(C)(2) and (4) were met. The vote was three to two in finding that the dock would not interfere with existing beach areas. The Board members unanimously agreed that the size of the dock was no larger than necessary for its activity, but they divided three to two in voting that the size was consistent with the conditions, use, and character of the area. The Board voted three to two to uphold the Planning Board's grant of a permit.

## II. DISCUSSION

[¶ 6] When the Superior Court has acted as an intermediate appellate court in a land use case, we review the operative decision of the municipality. *Springborn v. Town of Falmouth,* 2001 ME 57, ¶ 8, 769 A.2d 852, 855. In this case the operative decision is that of the Board of Appeals following its de novo hearing. We review the Board's decision "for an abuse of discretion, error of law, or findings unsupported by substantial evidence in the record." *Id.* (citation omitted). The interpretation of a zoning ordinance is a question of law that we review de novo. *Id.* We examine the plain meaning of the language of the ordinance, and we construe its terms reasonably in light of the purposes and objectives of the ordinance and its general structure. *Id.*

■ [¶ 7] Stewart first contends that the ordinance prohibits the construction of any dock on a beach because all docks built on a beach interfere with the beach. He interprets section 15(C)(2) of the ordinance as confining the construction of docks to locations either above the high water mark or where there is no beach. Section 15(C)(2), however, does not ban docks on beaches; it requires that there be a finding that the dock not interfere with the beach. The Board made such a finding. To the extent that Stewart is arguing that the finding is not supported by the record, he has not called our attention to any matter in the record that would compel a finding that this particular proposed dock will interfere with the beach on which it

1. Section 15 of the Shoreland Zoning Ordinance for the Municipality of Sedgwick is entitled "Land Use Standards" and reads in pertinent part:

   All land use activities within the shoreland zone shall conform with the following provisions, if applicable.
   . . . .
   C. Piers, Docks, Wharfs, Bridges, and Other Structures and Uses Extending Over or Beyond the Normal High–Water Line of a Water Body or Within a Wetland.

   1. Access from shore shall be developed on soils appropriate for such use and constructed so as to control erosion.
   2. The location shall not interfere with existing developed or natural beach areas.
   3. The facility shall be located so as to minimize adverse effects on fisheries.
   4. The facility shall be no larger in dimension than necessary to carry on the activity and be consistent with existing conditions, use, and character of the area.

will be constructed.[2] *See Lentine v. Town of St. George,* 599 A.2d 76, 80 (Me.1991).

■ [¶ 8] Stewart also argues that the Board erred in finding that the size of the dock was no larger than necessary to carry on the activity. Ordinance, § 15(C)(4). In this case the activity is access to the Schneiders' boat as that is the reason given by the Schneiders for wanting to build the dock. Stewart contends that the ordinance provision, by using the word "necessary," must be interpreted to mean that the Schneiders were required to demonstrate their need for the dock. He maintains that as long as the Schneiders have access to their boat through another means, such as mooring the boat in the nearby river and using their skiff to reach the boat, they have no need for a dock on their property. However, the meaning of the ordinance is plain: the dock should be no larger than necessary to carry on the activity. Stewart's novel argument that the ordinance requires the permit applicant to show absolute need, as opposed to need in relationship to size for the intended activity, would stretch the ordinance beyond reason. Other than arguing that the Schneiders have no need for a dock and that such a need is a prerequisite to a permit, Stewart made no argument that the proposed dock was too large for its intended purpose.

■ [¶ 9] Stewart also contends that the size of the proposed dock is not consistent with the conditions, use, and character of the area. Ordinance, § 15(C)(4). In his oral presentation to the Board, Stewart eloquently described the pristine nature of the area, and the record contains photographs showing the beauty of Eggemoggin Reach. There was also discussion at the Board hearing of a number of other docks within two miles of the Schneider property. The Schneiders furnished photographs of several of the docks in the area. From the portion of the record that has been furnished to us, we cannot conclude that the Board's finding that the size of the proposed dock was consistent with the conditions, use, and character of the area, is unsupported by substantial evidence.

[¶ 10] A similarly worded ordinance regarding the size of piers, docks, and wharfs was at issue in *Lentine v. Town of St. George,* 599 A.2d at 77–78 n. 2. We interpreted the St. George ordinance, as applied to a wharf, to mean that its size could not be larger than necessary for its purpose and its size had to be consistent with the conditions, use, and character of the area. *Id.* at 79. The Sedgwick Board of Appeals cited to *Lentine* and correctly applied the same interpretation to the Schneiders' dock that we had applied to the wharf in *Lentine.*

■ [¶ 11] Stewart finally argues that the Board erred by not requiring the Schneiders to prove that the dock would conform to the general purposes of the Shoreland Ordinance. Stewart relies on the portion of section 16(D) of the Ordinance that reads: "The applicant shall have the burden of proving that the proposed land use activity is in conformity with the purposes and provisions of this

---

**2.** An argument by Stewart that we do not reach is that section 15(C)(2) is unconstitutional unless it is interpreted to require the permitting authority to balance the applicant's need for the dock against the public's interest in protecting the beach from development. The ordinance does not lend itself to an interpretation that would require the balancing test proposed by Stewart. Because we are loath to reach constitutional issues unless absolutely necessary, we do not do so here. A holding that section 15(C)(2) is unconstitutional would not assist Stewart. If the section were unconstitutional, it would be declared invalid, and the Schneiders would prevail in obtaining their permit because they met the other requirements of the ordinance. *See Kosalka v. Town of Georgetown,* 2000 ME 106, ¶ 17, 752 A.2d 183, 187.

Ordinance." This appears on its face simply to state who has the burden of persuasion when a person makes an application to the Planning Board for a permit. Stewart, however, reads into this provision a substantive requirement that the Schneiders must have demonstrated that the dock conforms with the general purposes of the Shoreland Ordinance contained in section 1. That section, which is entitled "Purposes," reads:

> The purposes of this Ordinance are to further the maintenance of safe and healthful conditions; to prevent and control water pollution; to protect fish spawning grounds, aquatic life, bird and other wildlife habitat; to protect buildings and lands from flooding and accelerated erosion; to protect archaeological and historic resources; to protect commercial fishing and maritime industries; to protect freshwater and coastal wetlands; to control building sites, placement of structures and land uses; to conserve shore cover, and visual as well as actual points of access to inland and coastal waters; to conserve natural beauty and open space; and to anticipate and respond to the impacts of development in shoreland areas.

More specifically, Stewart contends that the Schneiders did not show that the dock would conform to the purposes of conserving visual access to coastal waters and conserving natural beauty and open space.

[¶ 12] Applicants for permits, however, are not required to demonstrate that their projects adhere to each of the general purposes. Instead, the general purposes provide the framework for the specific requirements of the ordinance, such as those found in section 15(C) dealing with piers, docks, and wharfs. The general purposes inform and guide the interpretation of the more specific provisions. The Schneiders were required to demonstrate that their proposed dock met the requirements of section 15(C). The provisions of section 15(C) requiring that the dock not interfere with the beach and that the size of the dock be consistent with existing conditions are specific means by which the general purposes, including the purposes of conserving visual access, open space, and natural beauty, are carried out. While the general purposes are useful for the officials and others who must interpret the ordinance, they themselves do not provide the qualitative standards necessary for the evenhanded administration of a zoning ordinance. The general purposes of conserving visual access, open space, and natural beauty, if utilized as separate standards upon which permits were denied, would likely suffer the fate of being declared unconstitutionally vague. *See Kosalka v. Town of Georgetown*, 2000 ME 106, ¶ 17, 752 A.2d 183, 187 (holding that requirement to "conserve natural beauty" is an unconstitutional condition because it is unmeasurable and "lacking in cognizable, quantitative standards").[3]

[¶ 13] We conclude that the Board's decision that the Schneiders are entitled to the permit to build the dock is supported by substantial evidence, is not contrary to law, and does not constitute an abuse of discretion.

The entry is:

Judgment affirmed.

---

3. Stewart also contends that if section 15(C)(2) is not interpreted to ban all docks from beaches, it must be interpreted in light of the purposes of the ordinance. While we agree with this contention, we do not agree that the Board of Appeals failed to consider the general purposes when it found that the proposed dock would not interfere with the beach.