STATE OF MAINE                          SUPERIOR COURT
CUMBERLAND, ss.                         CIVIL ACTION
                                        DOCKET NO. AP-22-03

PETER L. MURRAY et. al.              )
                                     )
            Petitioners              )
                                     )
                                     )
        v.                           )
                                     )
                                     )
CITY OF PORTLAND                     )  ORDER
                                     )
            Respondent               )
                                     )
and                                  )
                                     )
                                     )
37 MONTREAL, LLC                     )
                                     )
Party-in-Interest                    )
                                     )

Before the Court is Peter L. Murray, Deborah D. Murray, Carol Connor, Michael Hoover

and Jean Mcmanamy's (collectively "Petitioners") fully briefed Rule 80B petition for review of

governmental action. Also before the Court is Party-in-Interest 37 Montreal, LLC ("37

Montreal") and Respondent City of Portland's (collectively "Respondents") motion to

supplement the administrative record. For the reasons set forth herein, both are DENIED.[1]

---

[1] For the Court's ruling on the motion to supplement the administrative record, *see infra*, n.3.

1

# FACTUAL BACKGROUND

A review of the administrative record filed with the Court as part of this administrative appeal gives rise to the following factual background:

This litigation concerns the City of Portland Planning Board's ("Board") decision to approve a Level III Site Plan for a four-story apartment complex in Portland's East End. (Certified Record ("CR") 267.) The Site Plan was filed with the City by Party-in-Interest 37 Montreal, LLC ("37 Montreal"). (CR 267.) The approval allows for the demolition of two vacant single-family houses and the construction of the apartment building in their place ("The Property"). (CR 273.) The new building will be located at the address of 19 Willis Street, in Portland, Maine. (CR 273.) The Petitioners who are challenging the Board's approval of The Property's construction are five individuals who own property in the vicinity of The Property. The Property is in the City's R-6 Zoning district as well as the Munjoy Hill Neighborhood Conservation Overlay District ("MHNCOD"). (CR 314.)

On August 12th, 2019, 37 Montreal filed their initial application for a Level III Site Plan.[2] (CR. 1.) Following submission of the site plan application, the planning board held a public workshop on September 24th, 2019. (CR 273). At that meeting, the Board accepted public comment and provided its initial feedback on the project including recommendations that have since been incorporated into the design plan. (CR 273.)

Comments from the public generally focused on the scale of the project and its compatibility with the neighborhood. (CR 335-350.) Common objections to the project included its overbearing size and 37 Montreal's "failure" to respect the scale and character of the surrounding neighborhood. (CR 273.) After this meeting, there was a lull in project activity

---

[2] In the City, a "Level III Site Plan Review" is required for any project involving the "construction of any new structures having a total floor area of 10,000 square feet" that is "located in the R-6 zoning district. (CR 533.)

which persisted until April of 2021 when 37 Montreal filed a new set of plans with the City. (CR 200-210.) A public hearing was scheduled to address these plans on July 13th, 2021. (CR 199.) Ahead of that hearing, the Petitioners and several other Munjoy Hill residents submitted written statements reiterating their objections to the project's plans. (CR 335-340, 342-345, 347.) The thrust of these comments was that the proposal failed to respect the architectural character of the neighborhood; violated the maximum height threshold for structures located within the MHNCOD; and ran afoul of the applicable setback requirements. (CR 335-340, 342-345, 347.)

The maximum height of a structure located within the MHNCOD is thirty five feet, with a potential extension up to forty five feet in the event a project proposal meets certain criteria which offer a "bonus" ten feet. (CR 484.) Portland's municipal code defines the height of a building with a flat roof as "the vertical measurement from grade . . . to the highest point of the roof." (CR 439.) Portland's municipal code also provides for a minimum side street setback of five feet and a minimum side yard setback of ten feet. (CR 314.)

37 Montreal submitted final plans for the project in November and early December of 2021. (CR 2-129.) The Board then scheduled a final hearing on the project for December 14th, 2021. (CR 728.) At that meeting, the Board held a public hearing on the application, which included a presentation by 37 Montreal's consultants, questions from members of the Board and public comment. (CR 728-787.) At meeting close, six members of the planning board voted unanimously, to approve 37 Montreal's development of the Property. (CR 782-786.)

On January 15th, 2022, the Petitioners filed a timely appeal of the Board's approval pursuant to M.R. Civ. P. 80B. On March 25th, 2022, 37 Montreal filed a reply brief in which the City joined. The Petitioners filed their opposition to the reply on April 14th, 2022, and the

Respondents answered on May 3rd, 2022. Petitioners' 80B appeal, now fully briefed, awaits this Court's decision.

## 80B STANDARD OF REVIEW

The Court reviews Board decisions for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record. 5 M.R.S. § 11007(4)(C) (2022); *Sproul v. Town of Boothbay Harbor*, 2000 ME 30, ¶8, 746 A.2d 368. Judicial review of a city council's decision shall be limited to "the record of the proceedings before [it]". M.R. Civ. P. 80B(f). When review of a government decision is sought pursuant to M.R. Civ. P. 80B, the court "may not substitute its judgment for that of the [municipality] on questions of fact." 5 M.R.S. § 11007(3) (2022); *Tarason v. Town of S. Berwick*, 2005 ME 30, ¶ 6, 868 A.2d 230. On review, the court may affirm the decision, remand the case for further proceedings, or reverse or modify the decision. *Murray v. Lincolnville*, 462 A.2d 40, 44 n. 6 (Me. 1983); 5 M.R.S. § 11007(4)(A-C) (2022). A petitioner who brings a Rule 80B appeal carries the burden of proof. *See Tompkins v. City of Presque Isle*, 571 A.2d 235, 236 (Me. 1990).

## DISCUSSION

The Petitioners challenge the Board's decision on three grounds: (1) The Board erred by improperly calculating the height of the Property for ordinance compliance purposes; (2) The Board erred in its interpretation of the Code because it determined that retaining walls were not "structures" for setback compliance purposes; and (3) The Board erred in deciding not to commission a separate report from the City's Historic Preservation Board ("HPB") regarding the character and build patterns of the Munjoy Hill neighborhood and in failing to find the project compatible which such character and build patterns.[3]

---

[3] The Respondents have moved to supplement the administrative record with documents which pertain to the HPB's review of 37 Montreal's earlier application for demolition of a structure which had been tagged by the City's

## I. Height Calculation

Petitioners' first assignment of error is that the Board improperly approved 37 Montreal's development proposal because it misinterpreted the City's ordinance providing the allowable height of structures in the MHNCOD. The relevant ordinance provides that the maximum height for a structure within the MHNCOD is 35', but that maximum can be extended to 45' for developments of three or more units if the buildable lot is over 2,000 square feet and the plan includes at least one "workforce housing unit." (CR 484.) Here, the operative site plans triggered the 45' measurement. (CR 439.)

The Petitioners contend that, when determining compliance with the 45' maximum, the Board erred in their interpretation of the word "grade." They claim that the word "grade," as used in this ordinance, means the "ground level around the building." The Respondents accept that the word "grade" can be limited to the ground level around the building but challenge the meaning of "ground level." Thus, the Court must determine whether, given that definition of the word "grade," the record supports the City's finding that 37 Montreal's site plans were compliant with the MHNCOD height restriction.

The interpretation of municipal ordinance is a question of law. *See Gensheimer v. Town of Phippsburg*, 2007 ME 85, ¶ 8, 926 A.2d 1168, 1170. When interpreting the language of a municipal ordinance, the Court must first evaluate the plain meaning of the Ordinance and, if the meaning is clear, "need not look beyond the words themselves." *Wister v. Town of Mt. Desert*, 2009 ME 66, ¶ 17, 974 A.2d 903. A Court construes the terms of an ordinance reasonably,

---

preservation office as preferably preserved. While the documents may be relevant to addressing the Petitioners' arguments, the Historic Preservation Board is not the Planning Board. The proposed supplemental administrative record consists of documents that were not before the City of Portland's Planning Board when the operative, reviewable, and challenged decision was made. *See* M.R. Civ. P. 80B(e)(2). Moreover, none of those documents were before the Planning Board when they made their decision. *See* M.R. Civ. P. 80B(f) ("review shall be based upon the record of the proceedings before the governmental agency"). Accordingly, the motion is DENIED.

considering its purposes and structure and to avoid absurd or illogical results. *See Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶ 21, 107 A.3d 621; *Stewart v. Town of Sedgwick*, 2002 ME 81, ¶ 6, 797 A.2d 27. An interpreting court should give terms not otherwise defined "their common and generally accepted meaning unless indicated otherwise by their context in the ordinance." *DeSomma v. Town of Casco*, 2000 ME 113, ¶ 9, 755 A.2d 485, 488.

The main issue presented by is whether the "ground area" from which the grade measurement is taken must be calculated from natural, terrestrial features, or may be measured from artificial features which have been added to the site on top of the natural land. While relatively complex conceptually, the Court understands the Petitioners to be arguing for the "grade" measurement to be taken from "pre-development" grade. Consequently, it understands the Respondents to be arguing for the "grade" measurement to be taken from "post-development grade." [4]

The Petitioners claim that measuring height from post-development grade would lead to absurd or illogical results because it would allow any prospective developer to "heap mounds of earth into the sky" and then claim the right to build on top of them. The Respondents, for their part, claim that such an absurd result would not occur because of the various other approvals and controls needed to get full site approval from the Board. Thus, they claim that the City's interpretation of its ordinance's height restriction as being measured, at the ground level, from the average of various post-development data points, is reasonable. The Court agrees.

---

[4] The Court uses the modifiers "pre-development" and "post-development" because it thinks that is the best way to characterize the parties' competing interpretations. The Petitioners object to the height of a structure being calculated from any artificial structure, fill, or modification added to the site. The Respondents advocate for calculating height based on the average grade of the site, as determined by averaging multiple different measurements. Under the Respondents approach, the data points used for measurement would be taken regardless of any artificial additions to the area. Accordingly, the Petitioners desired methodology involves determining height from the natural, undeveloped land, while the Respondents' chosen process contemplates the measurements being taken from land that has, in some way, been developed.

The text of the ordinance itself distinguishes between the terms "grade" and "pre-development grade" by indicating their alternative applicability. The use of "pre-development grade" for calculating a structure's height is only done "on the islands." The Ordinance itself provides a definition for the term "pre-development grade" which is distinguished as the "average grade, existing on October 1, 2000, at the corners of the foundation of the proposed structure." (CR 454.) If the "pre-development grade" was intended for use in a MHNCOD height calculation and not just "on the islands" then it is curious why the Ordinance would not impose such a mandate. Accordingly, the term "grade," as used in the ordinance, must carry a different meaning than the term "pre-development grade." The Board defines the term "grade" as the "average" of multiple different data points taken from the site. In order for this definition to pass muster under this Court's review, such a definition must not render the Ordinance's effects "absurd" or "illogical" in light of its "purposes and structure." *See Dickau*, 2014 ME 158, ¶ 21, 107 A.3d 621. The Court determines it does not.

While the Court understands the Petitioners point regarding the potential for limitless fill and other mounds of earth to be added to an existing development site, the Court finds the countervailing considerations raised by the Respondents to be more persuasive. If the Court were to determine that the word "grade," as used in the ordinance means "post-development grade" then it may render many of the site permits issued by the Board invalid.

As was noted at the December 14th hearing, it has been the City's practice "for years" to calculate the height of a structure in the MHNCOD by using its "average grade" methodology.[5]

---

[5] At the December 14th hearing, David Silk, a board member, asked the planning staff how the grade, for height calculation purposes, is calculated. Deputy Planning Director Kevin Kraft replied as follows:

> [T]he average grade is calculated by averaging either the four sides of the building or four points of the building or various points around the building and it's at the discretion of the applicant to choose whether they'd rather do four points or a variety of points around the perimeter of the building. And that's been the city's practice consistently for a number of years.

(CR 743.)

While no exact figures have been submitted, there likely would be a number of structures that would fall out of compliance with the MHNCOD's height requirements if the Court were to reject the City's practice now. Additionally, the Court finds persuasive the Respondents' assertions that other provisions of City's land use code would prevent a structure from reaching the limitless heights feared by Petitioners.

The administrative record submitted as part of this appeal reflects that the Board reasonably interpreted the City's structural height restriction in the MHNCOD and discerns no error in their decision to approve 37 Montreal's proposed design. Accordingly, the Court affirms the Board's finding that the proposed structure meets the forty five foot height limitation mandated by the ordinance.[6] There is ample record evidence to support this finding.

## II. Retaining Walls

The Petitioners next assert that the Board erred when it determined that the proposed retaining walls were not "structures" for the purpose of applying the City land use code's setback provisions. Specifically, the Petitioners challenge the Board's findings that 37 Montreal's site plans complied with the MHNCOD's "minimum side yard setback" and "minimum side yard setback on a side street."

As the Respondents point out, the Petitioners do not contend that the four story, 19 Willis Street property itself violates the setback provisions. Instead, they claim that the retaining walls which exist outside the building's main structure must also comply with the MHNCOD's setback provisions.

The City's land use code defines the term "setback" as the "required distance and the land resulting therefrom between a street line and the closest possible line of conforming

---

[6] The forty-five foot restriction is applicable here because the proposal included at least one workforce unit in a complex of three total units or more. This adds ten "bonus" feet to the default thirty-five foot restriction.

structure." (CR 456.) It also defines a "side yard" as "a yard adjoining a side lot line extending from the front yard to the rear yard, the width of which shall be the shortest horizontal distance between the side lot line and any structure." (CR 462.) And, most importantly, it defines the term "structure" as "anything constructed or erected of more than one member which requires a fixed location on the ground." (CR 458.)

Unlike the term "grade," discussed *supra* 6, which was ambiguous and undefined, the term "structure" which is the keystone of this analysis, is defined in the ordinance. The argument here is over whether a retaining wall fits that definition. As is clear from the record, if the retaining walls on 37 Montreal's proposed site plan do meet the definition of a "structure," then their site plan is not in compliance with MHNCOD's setback provisions.[7]

The Petitioners invite the Court to perform a two step analysis. First, they say the Court must determine what the definition of the term "structure" means, and second they say that, given that meaning, the Court must determine if the retaining walls are "structures." However, the Court will not seek to redefine a term when an ordinance clearly proscribes its meaning. *See 21 Seabran, LLC v. Town of Naples*, 2017 ME 3, ¶ 12, 153 A.3d 113. Thus, the only operative question here is whether the "retaining wall" is an object that is "constructed of more than one member which requires a fixed location on the ground."

In this case, the Board found that they were not and that 37 Montreal's proposed development was compliant with each one of the dimensional requirements imposed by the applicable zoning provisions — including side yard and side street setbacks. (CR 277.) This

---

[7] The way the Court reads the City's land use ordinance, the MHNCOD's specific setback provisions impose additional requirements upon a developer seeking site plan approval within that district. The definitions of the term "setback" and "side yard" found elsewhere in the ordinance still govern the analysis. MHNCOD's "side yard" and "side street" setbacks — ten and five feet respectively — are still measured from the nearest "conforming structure." Although the MHNCOD specific provisions utilize the term "building," the Court interprets that term's usage as being referential in nature. The term's usage helps distinguish between alternatively applicable setback distances which turn on the height of a project's main structure — a "building."

affirmative finding was made despite having renderings before it which clearly showed the retaining walls being violative of the ordinance's setback distances.

After thoroughly reviewing the 788 page record, the Court cannot say this finding was not amply supported. After Petitioner Murray raised his setback compliance concerns to the Board at the December 14th meeting, the City's planning staff were clear that "retaining walls are not considered a structure for setback purposes in the City." (CR 767.) Accordingly, the Court refuses to disturb the Board's conclusion that the 19 Willis Street site plan conformed with all applicable setback requirements. *See Balano v. Town of Kittery*, 2017 ME 110, ¶ 2, 163 A.3d 144 ("We accord substantial deference to local characterizations or fact-findings as to what meets ordinance standards.").

## III. Historic Preservation Board

The third error the Petitioners assign to the Board is their apparent failure to commission a report from the City's HPB regarding the character and build patterns of the Munjoy Hill neighborhood and their failure to find the project compatible with such character and build patterns. The Respondents' assert that no such separate report was required and that the Board properly found the site plan to be in compliance with all applicable site design standards, including ones which address development adjacent to historic districts.[8] (CR 571.)

The Petitioners base their argument on Section 14-526(d)(5)(b), which provides, in pertinent part:

> When any proposed development is within one hundred feet of any designated historic district . . . such development shall be generally compatible with the major character defining elements of the landmark or portion of the district in the immediate vicinity of the proposed development . . . . To aid the planning board in its deliberations, historic preservation staff shall provide a written analysis of the proposed development's

---

[8] Because 19 Willis Street is located within 100 feet of the Munjoy Hill Historic District, a historic preservation advisory review was done as part of the approval process. (CR 285.)

10

immediate context, identifying the major character-defining elements and any established building patterns that characterize the context.

(CR 571-572.) The Petitioners claim that the written analysis required by this ordinance section is separate and distinct from the design review process and, therefore, the historic preservation advisory review of the site plan cannot satisfy this requirement. The Respondents counter that, despite what the text of the ordinance says, the Board was provided with sufficient written materials to aid in their review of the 19 Willis Street site design.

Although no specific, separate, written analysis exists in the record which satisfies the technical requirements of Section 14-526(d)(5)(b), the Court finds that there was ample record evidence to support the Board's conclusion that 19 Willis Street's Site Design was consistent with its immediate historical context.

The Planning Board Report itself notes that the site plan underwent historic preservation review by the Historic Preservation Program Manager, the City's Urban Designer, and the lead project Planner. (CR 285.) This review culminated in a design review memorandum authored by Caitlin Cameron who is an urban designer for the City. That report clearly considers, in detail, the site plan's "compatibility with the surrounding buildings and the general character of the established neighborhood." (CR 327.) It also notes, prior to its conclusions, that the project is "on a transitional site" situated between a newer, modern development and a more historic neighborhood; and lists the "predominant, character defining elements" of the immediate neighborhood. (CR 327.) The report then goes on to make multiple conclusions that the site's design is consistent with the neighborhood's character.

Even though this is not a separate, written report concerning the site plan's harmonization with the characteristics and features of the Munjoy Hill Historic District, the Court agrees with the Respondents that the historic preservation manager's participation in the design review —

11

and the subsequent written findings produced from that review — did constitute a written analysis that "aided" the planning board in its deliberations. Accordingly, the Court finds that there is also ample record support for the Board's finding that the 19 Willis Street design plan complied with the Munjoy Hill Neighborhood's major character defining elements. The Board's approval of the site plan without a separate written report from the HPB was not reversible error.

**Entry Is:**

Petitioners' Petition for Review of Governmental Action filed pursuant to M.R. Civ. P. 80B is Denied.

Respondent's Motion to Supplement the Administrative Record is Denied.

The clerk is directed to incorporate this order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: 8/1/22

John O'Neil Jr.
Justice, Maine Superior Court

Entered on the Docket: 8/5/2022

12