STATE OF MAINE  
CUMBERLAND, ss

SUPERIOR COURT  
CIVIL ACTION  
DOCKET NO. PORSC-AP-22-21

HARRY KEATES and  
ROBIN SILVERMAN,

        Petitioners,

        v.

TOWN OF FREEPORT,

        Respondent

**ORDER**

Before the court is a Rule 80B appeal by Petitioners Harry Keates and Robin Silverman challenging Respondent Town of Freeport's second denial of their application for a wharfing-out permit at 64 Lupine Lane in Freeport, Maine. Petitioners request the court vacate the decision of the Town's Coastal Waters Commission ("CWC") denying the application for a second time and remand the matter to Respondent for approval of the application.

**Background**

This court issued a decision on a related appeal on July 5, 2021. At that time, Petitioners challenged the first denial of their wharfing-out permit, arguing that the "general harmony"[1] standard of the municipal ordinance that the CWC applied was unconstitutional. The ordinance, which is also relevant to this appeal, reads as follows:

> The following standards shall apply to all piers, docks, floats, wharves, bridges, and other structures and uses extending over and beyond the normal high water line of a body of water, submerged lands or wetland: [...] 1. The project shall be no larger in dimension than is consistent with the conditions, use and character of its surroundings; it will not adversely affect water use by adjacent properties; and will remain in general harmony with that of existing activities in adjacent areas

---

[1] The general harmony standard refers to the portion of the ordinance reading, "will remain in general harmony with that of existing activities in adjacent areas within the Freeport Coastal Water Commission's jurisdiction...."

1

Entered on the Docket: 12/1/2022

REC'D CUMB CLERKS OFC  
DEC 1 '22 AM10:44

within the Freeport Coastal Water Commission's jurisdiction. The property for which the project will be constructed shall have a minimum of 60 feet of water frontage. The length from the highest annual tide water mark shall not exceed 125' and must be completed within two years of final approval.

R. 326.

This court's July 5, 2021 decision found that the general harmony standard was impermissibly vague and therefore unconstitutional. The court remanded to the agency, with instructions to make findings of fact regarding whether the proposed wharf violated the "dimensional" standard.[2] On May 11, 2022, the CWC adopted a written decision, including findings of fact and conclusions of law, which was drafted by the town attorney.

In its second denial of the application, the agency found that Petitioners had not met their burden of proof to show that the project is no larger in dimension than is consistent with the conditions, use, and character of the surrounding area. R. 307.

**Legal Standard**

In a Rule 80B appeal, the Superior Court reviews a municipality's decision directly for errors of law, findings not supported by the evidence in the record, or abuse of discretion. *Tenants Harbor Gen. Store, LLC v. Dep't of Envtl. Prot.*, 2011 ME 6, ¶ 8, 10 A.3d 722. The party asserting an error bears the burden of showing that error before the court. *Quiland, Inc. v. Wells Sanitary Dist.*, 2006 ME 113, ¶ 16, 905 A.2d 806. The court may not substitute its judgment for that of the board and may not determine that a board's decision is wrong "because the record is inconsistent or a different conclusion could be drawn from it." *Phaiah*, 2005 ME 20, ¶ 8, 866 A.2d 863.

---

[2] The dimensional standard refers to the portion of the ordinance reading, "shall be no larger in dimension than is consistent with the conditions, use, and character of its surroundings...."

2

**Discussion**

The Petitioners argue the dimensional standard is unconstitutional,[3] the proposed findings do not fairly represent the findings of fact made by the CWC itself, none of the findings of the CWC is based on competent evidence that the project would violate the dimensional standard, and CWC's interpretation of the dimensional standard constitutes legal error. The court addresses each of the Petitioners' arguments in turn.

**1. Constitutionality.**

The court first considers whether the dimensional standard is constitutional. "A person challenging the constitutionality of a legislative enactment bears a heavy burden of proving unconstitutionality." *Ouellette v. Saco River Corridor Commission*, 2022 ME 42, ¶ 15, 278 A.3d 1183. A statute cannot be ruled unconstitutional unless it cannot be construed in a manner that passes constitutional muster. *Id.*

"[I]n delegating power to an administrative agency, the legislative body must spell out its policies in sufficient detail to furnish a guide which will enable those to whom the law is to be applied to reasonably determine their rights thereunder, and so that the determination of those rights will not be left to the purely arbitrary discretion of the administrator." *Stucki v. Plavin*, 291 A.2d 508, 510 (Me. 1972). Petitioner argues that the Law Court's ruling in *Wakelin v. Town of Yarmouth* illustrates that the dimensional standard is too vague to pass constitutional muster. 523 A.2d 575 (Me. 1987). Respondent counters that the Law Court considered a nearly identical phrase in a municipal ordinance in *Lentine v. St. George* and found the ordinance constitutional. 599 A.2d 76 (Me. 1991).

In *Wakelin*, the issue was whether the applicant could construct three rental units in a

---

[3] The Town argues that Petitioners have waived this argument. Finding that the dimensional standard is constitutional, the court declines to decide this point on the basis of waiver.

barn on the property. The Law Court held that a town ordinance, which allowed a certain use in a zoning district if the town zoning board found that "[t]he proposed use will be compatible with existing uses in the neighborhood, with respect to physical size, visual impact, intensity of use, proximity to other structures and density of development," was unconstitutionally vague. 523 A.2d at 576. It reasoned that terms "intensity of use" and "density of development" require "quantitative standards ... to transform the unmeasured qualities ... into specific criteria objectively usable by both the Board and the applicant in gauging the compatibility of a proposed use with existing uses in the surrounding area." *Id.* at 576-7.

In *Lentine*, the applicants wished to install a wharf in front of their harborfront home. The Law Court held that a town ordinance reading, "[t]he facility shall be no larger in dimension than necessary to carry on the activity and be consistent with existing conditions, use, and character of the area" was constitutional. 599 A.2d at 77 n.2, 79. The Court noted that the ordinance lent itself to a constitutional reading: the Petitioners' "wharf may not be *either* (1) 'larger in dimension than necessary to carry on the activity' of deep water access for the Lentines' pleasure boat, *or* (2) 'larger in dimension than . . . [will] be consistent with existing conditions, use, and character of the area.'" *Id.* at 79 (emphasis added). It defined "consistent" as "'not conflicting or interfering with,' so that the second dimensional requirement of the section is that the proposed wharf may not be so large that it conflicts or interferes with existing conditions, use, and character of the area that would be affected by the wharf." *Id.*

*Lentine*, decided after *Wakelin*, is directly on point. While Petitioners argue that the Freeport ordinance differs from the ordinance in *Lentine* because it is missing the first clause, the Law Court was clear that both clauses standing alone are constitutional because they are both tied to the dimensional requirement. The ordinance in this case imposes a requirement that the

4

dimensions of a wharf be no larger in dimension than is consistent with the conditions, use and character of its surroundings. This court finds no material difference between the second clause of the ordinance in *Lentine* and the ordinance before the court in this matter.

The court agrees that the distinction between *Wakelin* and *Lentine* is nuanced. A close review of *Lentine* reveals, however, that the Court, construing the ordinance in favor of constitutionality, focused on the facts that the ordinance is limited to a wharf, as opposed to any type of general construction. *Lentine*, 599 A.2d at 80 ("[T]he consistency requirement cannot be read to relate to anything more than the proposed wharf's dimensions."). Reading the statute in a way to pass constitutional muster, the court finds the dimensional standard of the town ordinance relied on by the CWC in its second denial of Petitioners' application is constitutional. The review is limited to a comparison of the dimensions of the wharf to the existing "use, conditions and character of the area." The applicant understands that the criteria applies only to wharf dimensions, which provides sufficient guidance to assist the applicant. It is not wholly subjective. Therefore, the court declines to find the dimensional standard is unconstitutional.

## 2. Town attorney drafting findings of fact.

Petitioner next argues that the town attorney's drafting the proposed findings and conclusions was improper. Petitioner concedes that a board's tasking counsel with drafting findings and conclusions is a regular practice in Maine. The court finds no authority for Petitioner's stance that 1 M.R.S. § 407(1) requires a municipal agency to draft a written record entirely on its own. Thus, the court finds that when the CWC decided to adopt without alterations the findings and conclusions drafted by the town attorney, that document became the CWC's decision. As for Petitioners' related argument that the CWC's findings do not authentically represent the factual findings and legal conclusions as expressed by the CWC in its May 11,

5

2022 meeting, the court agrees with Respondent that the oral statements at the meeting are not controlling but are more properly seen as "the views of individual members of the decision-making agency" rather than the "decision-maker's findings." *Carroll v. Town of Rockport*, 2003 ME 135, ¶ 28, 837 A.2d 148.

### 3. Sufficiency of the Evidence.

Next, the court is unpersuaded by Petitioners' argument that the findings are not based on competent evidence regarding the project's dimensions and surroundings. Petitioners argue that the CWC's findings must relate to the size of the project and the conditions, use and character of the project's surroundings.

The court discerns no error regarding the CWC's findings. The CWC found that Kelsey Brook measured 25 feet across at the project site and that the project would stretch to within 1.4 feet of the centerline of the brook at high tide. It also found that the project would encompass 386 square feet and measure 86 linear feet in length. The CWC compared those dimensions with the surroundings, noting that there is limited navigability at the project site; that the project would be the only dock, wharf, or pier on Kelsey Brook; and that it would be in view of an abutting land preserve. In drawing its conclusion, it stated specifically that the total length of the project would be roughly 3.5 times longer than the width of the brook, that the limited navigability of the brook is inconsistent with a project that dwarfs the length and depth of the brook, that there are no surrounding uses similar to the proposed wharf, and that at least some of the immediate surrounding uses were specifically designed to preserve the natural state and a large, visible man-made dock is inconsistent with those uses. The court finds that the CWC's findings of fact do relate to the dimensional standard and taken together, provide substantial support for the conclusion that the project violates the dimensional standard.

6

### 4. Interpretation of the dimensional standard.

Finally, Petitioners argue that the CWC committed legal error when it interpreted the dimensional standard of the Freeport ordinance. This argument rests on three conclusions regarding the ordinance: that it allows piers to be up to 125' in length from the annual high tide mark; that the structure and purpose of the ordinance is to regulate navigation; and that the CWC impliedly found that the project would create none of the adverse impacts the ordinance is designed to prevent. First, the court does not agree with Petitioners' construction of the 125-foot length allowance. That language adds to the dimensional standard by forbidding all wharves that exceed 125 feet in length from the high tide mark, not by permitting all wharves under 125 feet. Next, the court finds that it need not look to the purpose of the ordinance as a whole because the dimensional standard is clear on its face. *See Portland Reg'l Chamber of Commerce v. City of Portland*, 2021 ME 34, ¶ 24, 253 A.3d 586 ("We construe words in an ordinance according to their plain meaning and construe undefined or ambiguous terms reasonably with regard to both the objects sought to be obtained and to the general structure of the ordinance as a whole."). Finally, the court declines to find that the CWC could not have found a violation of the dimensional standard where it did not find additional violations of the ordinance. Petitioners cite no authority for their statement that CWC "needed to consider *all* of the review criteria set forth in Article XIII" and therefore made implied findings that the project did not violate the remaining review criteria, Pl.'s Brief at 46, and the court is aware of none.

### Conclusion

The court concludes that Respondent made adequate and proper factual findings based on competent evidence to support its decision that the proposed project would violate the dimensional standard. It further finds the dimensional standard is specific enough to pass

7

constitutional muster. Petitioners' Rule 80B appeal of the denial of their wharfing-out permit is denied.

The entry is:

Petitioners' Complaint for Review of Governmental Action is DENIED.

The clerk may incorporate this Order on the docket by reference. M.R. Civ. P. 79(a).

Date: 12/1/22                                    Signed: _____

Thomas R. McKeon
Justice, Maine Superior Court

8